IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | Criminal No. 18-335 |
| ) | Senior Judge Nora Barry Fischer |
| ERIC WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

I.   **INTRODUCTION**

Presently before the Court is Defendant Eric Williams' counseled Motion for Emergency Relief from Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), the Government's Response in opposition thereto, Defendant's Reply and the Government's Sur-reply. (Docket Nos. 101, 105, 109, 111). After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendant's motion seeking compassionate release is denied, as the Court declines to exercise its discretion to reduce his sentence.[1]

II.   **BACKGROUND**

On December 12, 2018, Defendant was charged in a three-count Indictment as follows: possession with intent to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Count One); possession with intent to distribute a quantity of

---

[1] Defendant alternatively seeks release to home confinement. (Docket No. 101 at 6). This Court has previously held that "a release to home confinement 'is a change in the location where the inmate serves his sentence, … only the BOP, not this Court, has the statutory authority to release him to home confinement under Section 3621(b).' " *United States v. Richards*, Crim. No. 15-108, Docket No. 322 at 1-2 (W.D. Pa. June 19, 2020) (Fischer, J.) (citing *United States v. Horner*, Crim. No. 11-31, Docket No. 200 at 4 (W.D. Pa. May 28, 2020) (Gibson, J.) (and further citing *United States v. Black*, No. 2:12-cr-263-3, 2020 WL 2748288, at *1 (S.D. Ohio May 27, 2020)); *see also United States v. Rodriguez-Collazo*, No. 14-cr-00378-JMY, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) (observing that the district court lacks authority to grant a defendant's request for home confinement "because that authority rests solely with the BOP" and collecting decisions that have so held). Accordingly, Defendant's alternative request that he be released to home confinement is denied.

heroin and a quantity of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). (Docket No. 21).

After a pre-plea presentence investigation report ("pre-plea PIR") was prepared and issued, the Court scheduled a combined change of plea and sentencing hearing at the parties' request. (Docket Nos. 70, 71, 84, 86, 87). In advance of the combined hearing, neither party lodged any objections to the contents of the pre-plea PIR or the calculation of the advisory guideline range of 70 to 87 months' imprisonment. However, Defendant filed a Sentencing Memorandum in which he moved for a downward variance to a 60-month term of imprisonment, which was the mandatory minimum term required by statute. (Docket No. 93). In moving for a downward variance, Defendant highlighted his history of gainful employment and devotion to his family, as well as his disadvantaged upbringing and substance abuse history. (*Id.* at 4-5). Notably, Defendant did not rely on any physical condition or health problem as a basis for a downward variance. (*See id.*).

On January 21, 2020, Defendant pled guilty to Count One of the Indictment and acknowledged responsibility for the charges in Counts Two and Three pursuant to a plea agreement with the Government. (Docket Nos. 95; 95-1 at ¶¶ A.1, A.2; 97). On that same date, the Court sentenced Defendant to the statutory mandatory minimum term of 60 months' imprisonment, which was a 10-month downward variance below the bottom of the advisory guideline range, followed by a four-year term of supervised release. (Docket Nos. 95, 99).

In granting the downward variance and imposing the 60-month term of imprisonment, the Court explained that the sentence adequately addressed the nature and circumstances of Defendant's offense, as well as his history and background, and that it was sufficient, but not

2

greater than necessary, to meet all of the goals of sentencing.[2] To that end, the Court commented on the serious nature of the offense, as summarized in the pre-plea PIR, which involved Defendant's possession with the intent to distribute a large quantity of crack cocaine. (*See* Docket No. 84, ¶¶ 22, 23). During execution of a search warrant at Defendant's residence, which revealed a quantity of heroin/fentanyl and drug paraphernalia, he fled and resisted arrest, while carrying a backpack containing firearms. The Court observed that drug trafficking poses a substantial risk of harm to the community and additionally noted the danger presented by Defendant's firearm possession.

The Court also considered that Defendant was assessed only one criminal history point for a conviction of possession of drug paraphernalia and had other relatively minor juvenile adjudications and adult convictions, but his prior contacts with the criminal justice system did not deter him from engaging in the serious drug trafficking activity involved in this case. Finally, among other matters related to Defendant's history and background, the Court acknowledged that Defendant had a solid work history, is relatively healthy but has a substance abuse problem, and took some steps toward rehabilitation by attempting drug treatment and maintaining employment while on pre-trial release.

As noted, Defendant now seeks compassionate release under the First Step Act's recent amendments to 18 U.S.C. § 3582, arguing that his asthma coupled with the ongoing COVID-19 pandemic serve as extraordinary and compelling reasons to reduce his sentence. (Docket Nos. 101, 109). Although Defendant contends that his history of asthma makes him particularly vulnerable to contracting COVID-19 at FCI Elkton where he is incarcerated, (Docket No. 101, ¶

---

[2] An official transcript of the combined change of plea and sentencing hearing has not been filed on the docket in this case. Therefore, the Court summarizes its reasons for granting a downward variance and imposing the 60-month term of imprisonment by reference to an unofficial draft of the transcript.

10), he submits no medical records to substantiate this claim. In arguing for release, Defendant also suggests that he is not a danger to the community because he was released on bond prior to sentencing and permitted to self-report, and he has been placed in a low security institution. (*Id.* ¶¶ 20-21). Defendant additionally submits that his history of gainful employment and devotion to his family weigh in favor of release. (*Id.* ¶¶ 22-23). Defendant does not propose any specific release plan, other than to say that the Court "can be reasonably confident that [he will] return to his family and actively seek gainful employment."[3] (*Id.* ¶ 25).

The Government opposes Defendant's motion for compassionate release, as does the United States Probation Office. (*See* Docket Nos. 105 at 3; 111). The Government argues that Defendant's medical records from FCI Elkton, which the Government obtained and filed under seal, demonstrate that his asthma is not an extraordinary and compelling reason meriting a sentence reduction. (Docket Nos. 105 at 1, 3; 105-1). According to the Government, Defendant's medical records show his asthma is well controlled by medication, and he has not otherwise provided any evidence that he has moderate to severe asthma, which the CDC lists as a condition creating a higher risk for severe illness from COVID-19. (Docket No. 105 at 6, 7). As such, the Government asserts that Defendant has not met his burden to demonstrate that his current condition is an extraordinary and compelling reason for a sentence reduction. (*Id.* at 6).

The Government additionally contends that Defendant has failed to demonstrate that he

---

3   Although Defendant's motion is denied for the reasons set forth herein, the Court further notes that Defendant provides no details concerning a release plan, which is another factor weighing against a sentence reduction. *See e.g.*, *United States v. Alexander*, Crim. No. 19-32 (FLW), 2020 WL 2507778, at *5 (D.N.J. May 15, 2020) (rejecting contention that the defendant "is well-posed to take advantage of [the compassionate release] program because he has a release plan in place," where the defendant provided no specific details regarding his plan, other than his intent to reside with his uncle, and he failed to outline how his release plan will limit his likelihood of recidivism and protect the public from further crimes); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *1-*2 (C.D. Ill. May 8, 2020) (noting inadequacy of release plan as one factor, among other reasons, in denying motion for compassionate release even though 61-year old defendant with asthma, high blood pressure and a history of coronary artery disease was housed at FCI Fort Dix where there were many confirmed COVID-19 cases).

will not be a danger to the safety of the community if released and the § 3553(a) factors continue to support the sentence this Court imposed. (Docket No. 105 at 11-12). To that end, the Government highlights the serious nature of Defendant's offense conduct and notes that the Court adequately considered and accounted for his minimal criminal history and commendable employment history in granting a 10-month downward variance. (*Id.* at 12). The Government posits that any further reduction, much less granting Defendant release after serving only approximately four months of his 60-month sentence, would inadequately deter and punish Defendant for his serious criminal conduct and would not protect the public from someone who trafficked in controlled substances and possessed firearms. (*Id.* at 13).

In Reply, Defendant maintains that the Government's position concerning his asthma is contradicted by his placement on a list of high-risk inmates that FCI Elkton was ordered to draft as part of litigation in the Northern District of Ohio. (Docket No. 109 at 4-5). According to Defendant, his asthma is at least moderate because his BOP medical records note that he was hospitalized for three days because of it within the past year and he is dependent on medication to treat it. (*Id.* at 5, 6). Defendant also repeats that he is not a danger to the community, asserting that whatever risk he might pose "is no greater now than on the day he was permitted to self-report for the commencement of his sentence." (*Id.* at 6).

The Government counters in its Sur-reply that Defendant still fails to provide support for the claim that his asthma is moderate or severe, other than his reference to being placed on a list of high-risk inmates at Elkton. (Docket No. 111 at 1). Based on conversations with BOP counsel, the Government understands that Defendant was placed on that list because he self-reported that he was hospitalized in 2019 due to his asthma, not because he was evaluated by a doctor who determined that he has moderate to severe asthma. (*Id.* at 1-2). As to Defendant's contention

5

that he is not a danger to the community, the Government learned from BOP counsel that Defendant scored as a high risk of recidivism based on the PATTERN worksheet, which considers factors like age, criminal history and whether violence was involved in the offense.  (*Id.* at 2). Finally, the Government contends that releasing Defendant so early into his sentence would not adequately punish and deter him for his serious offense, would fail to protect the public and would create the potential for sentencing disparities among similarly situated offenders.  (*Id.* at 3).

No further briefing or supplementation has been requested and the Court considers this matter to be fully briefed and ripe for disposition. After considering the parties' respective positions set forth in the briefing, and a review of the record, and for the reasons that follow, Defendant is not entitled to a sentence reduction.

### III. DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."  *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, ___ F.3d ___, 2020 WL 4281503, at *2 (3d Cir. Jun. 26, 2020).  Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The statute guides the court's discretion by requiring the court to consider:

> (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a), to the extent they apply; and (3) whether a reduction is consistent with the Sentencing Commission's Policy Statement in § 1B1.13 of the Sentencing Guidelines.

*United States v. Brown*, No. 2:12-cr-00224-1, 2020 WL 4345077 at *1 (W.D. Pa. July 29, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Here, the Government does not contest that Defendant has exhausted his administrative remedies, but it does contest that he has met his burden of demonstrating that his current physical condition is an extraordinary and compelling reason requiring a sentence reduction and that he would not endanger the community if released. (Docket No. 105 at 1, 4). The Court addresses these matters in turn.

As an initial matter, the Sentencing Commission's policy statement related to § 3582(c)(1)(A) provides, in part, that "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). [4] The policy statement then identifies four categories of extraordinary and compelling reasons, including certain non-terminal medical conditions that substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13, Application Note 1(A)(ii). The defendant bears the burden to prove that extraordinary and compelling reasons exist. *See United States v. Smith*, Crim. No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citation omitted).

Defendant has not met that burden here, despite his assertion that extraordinary and compelling reasons are established because of his asthma and the ongoing COVID-19 pandemic.

---

4   "While the relevant portions of the Sentencing Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they do provide some benchmarks for the Court's consideration." *Brown*, 2020 WL 4345077, at *2.

(*See* Docket Nos. 101, 109). First, the Court finds that Defendant's asthma, in isolation, is not sufficiently serious to warrant release. Defendant's medical records indicate that he has a history of asthma[5] which is controlled with the use of an albuterol inhaler "approximately 5-6 times a week." (Docket No. 105-1 at 6, 9, 14). Without providing any additional medical documentation to establish the seriousness of his condition,[6] Defendant claims that "his long-term and frequent reliance on inhalers and shortness of breath from exercise establishes that, at a minimum, his asthma is moderate." (Docket No. 109 at 5). To the contrary, the record before the Court shows that Defendant's asthma is treatable with medication and the BOP is providing him access to appropriate medical care. As such, there is nothing to suggest that Defendant's asthma prevents him from being able "to provide self-care within the environment of a correctional facility," such that release is warranted. *See* U.S.S.G. § 1B1.13, Application Note 1(A)(ii).

The Court further concludes that Defendant's asthma considered in combination with the ongoing COVID-19 pandemic does not warrant release. To that end, the Court has considered the impact of the COVID-19 pandemic at FCI Elkton and recognizes that despite being "one of the

---

[5] With regard to Defendant's physical condition, the pre-plea PIR noted Defendant's report that "he is in good physical health." (Docket No. 84, ¶ 70). Defendant also reported his asthma diagnosis, but he did not mention any problems or limitations associated with it. (*See id.*). The only other information in the record which addresses the effect of Defendant's asthma is a BOP Health Services Clinical Encounter note indicating that he gets short of breath with exercise, has occasional wheezing and coughing when sick and was hospitalized for three days last year and needed steroids, but never had to be intubated. (Docket No. 105-1 at 6).

[6] As noted, Defendant maintains that his asthma is an extraordinary and compelling reason for compassionate release because he was placed on a list of high-risk inmates that FCI Elkton was ordered to draft as part of litigation in the Northern District of Ohio. (Docket No. 109 at 4-5). In this Court's estimation, Defendant's placement on that list is not dispositive. The Government's understanding from conversations with BOP counsel is that Defendant was placed on the list because he self-reported that he was hospitalized last year due to his asthma, not because he was evaluated by a doctor who determined that he has moderate to severe asthma. (Docket No. 111 at 1-2). That understanding is supported by Defendant's medical records which, as explained above, show that his asthma is controlled with medication. *See e.g., United States v. Travis Robertson*, Crim. No. 17-289, Docket No. 462 at 6 (W.D. Pa. July 7, 2020) (Hornak, C.J.) (denying compassionate release for a defendant whose asthma was treatable with an albuterol inhaler).

hardest-hit federal prison facilities in terms of Covid-19," Elkton has "shown signs that BOP measures designed to protect inmates such as visitation restrictions, mass testing, and modifications to facility operations are helping to curtail the spread of the virus." *United States v. Thornton*, Crim. No. 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020) (citing *United States v. Montanez*, No. 15-CR-122-FPG, 2020 WL 4218007, at *3 (W.D.N.Y. July 23, 2020)). At present, there are three cases of COVID-19 among inmates at Elkton and 978 inmates have recovered.[7] *See* https://www.bop.gov/coronavirus/ (last visited Aug. 24, 2020).

This Court agrees with others that have held that "[t]he existence of the virus in a prison – even the level of infection at Elkton – is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than his fellow inmates." *Thornton*, 2020 WL 4368155, at * 4 (quoting *United States v. Rutley*, No. 17-cr-56-pp, 2020 WL 4040729, at *7 (E.D. Wis. July 17, 2020)). Here, Defendant has not demonstrated that his asthma presents that severe risk.

According to the CDC, an individual with moderate to severe asthma "**might be at an increased risk** for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 24, 2020) (emphasis in original). The National Asthma Education and Prevention Program has classified asthma as moderate if: (1) symptoms occur daily and require the use of inhaled short-acting asthma medication every day; (2) symptoms interfere with daily activities; (3) nighttime symptoms occur more than once per week, but do not happen every day; or (4) lung function tests are abnormal. *See*

---

[7] Although nine inmates have died of COVID-19 while incarcerated at Elkton, all of those deaths occurred prior to early May 2020. *See* https://www.bop.gov/coronavirus/ (last visited Aug. 21, 2020); *Thornton*, 2020 WL 4368155, at *4 (citing *Montanez*, 2020 WL 4218007, at *3).

https://www.uofmhealth.org/health-library/hw161158 (last visited Aug. 24, 2020). Severe asthma involves even greater limitations on daily life. *See id.*

Here, Defendant's medical records do not show that his asthma is moderate, let alone severe. Defendant uses an albuterol inhaler "approximately 5-6 times a week." (Docket No. 105-1 at 6). There is nothing to suggest that Defendant's asthma interferes with his daily activities or that he experiences nighttime symptoms, and there is no evidence of abnormal lung function tests.[8] All told, then, Defendant's current asthma condition does not appear to place him at an increased risk for severe illness should he contract COVID-19.

In sum, the Court certainly is sympathetic to Defendant's concerns for his health given the COVID-19 pandemic[9] but concludes that they are presently too generalized to establish extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *Thornton*, 2020 WL 4368155, at *4 ("To merit compassionate release, Defendant must show more than mere fear or speculation concerning the possibility of contracting the virus.") (citations omitted).

Even if the Court were to conclude that Defendant's current medical condition coupled with the COVID-19 pandemic give rise to extraordinary and compelling reasons, those considerations do not outweigh the applicable factors set forth in § 3553(a) which the Court is to

---

8  The only potentially relevant tests in Defendant's medical records are a peak flow test conducted on March 6, 2020, which showed "good" effort without use of a bronchodilator, and a chest x-ray on March 18, 2020, which showed that Defendant's lungs are clear. (Docket No. 105-1 at 28, 56).

9  Defendant's concerns are no doubt shared by many in society given that the potential for exposure to the COVID-19 virus exists anywhere in the community at present.

consider. *See* 18 U.S.C. § 3582(c)(1)(A); *Pawlowski*, 2020 WL 4281503, at *2 ("[B]efore granting compassionate release, a district court must consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.") (internal quotation marks and citation omitted); *see also* U.S.S.G. § 1B1.13(2) (under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g)). As the Court of Appeals recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. *See Pawlowski*, 2020 WL 4281503, at *2.

Having carefully considered the relevant § 3553(a) factors in this case, as well as § 3142(g), the Court declines to exercise its discretion to reduce the 60-month term of incarceration in Defendant's case, as such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing. *See* 18 U.S.C. § 3553(a). In this Court's estimation, such sentence remains fair and appropriate, for the reasons previously detailed on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FCI Elkton.

The Court has once again carefully considered the § 3553(a) factors and finds that the nature and circumstances of the offense, Defendant's history and characteristics and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct" do not justify a sentence reduction here. 18 U.S.C. §§ 3553(a)(1); 3553(a)(2)(A)-(B). To that end, the Court reiterates the reasons previously stated at the sentencing hearing for granting a 10-month variance below the bottom of the advisory guideline range and imposing the 60-month

term of imprisonment.  First and foremost, Defendant engaged in extremely serious criminal conduct involving drug trafficking and firearm possession, despite having had prior brushes with the law on lesser offenses.  As such, the sentence imposed was necessary and appropriate to provide just punishment, to promote respect for the law and to afford adequate deterrence.  All of these factors previously discussed by the Court remain relevant and counsel against granting the sentence reduction Defendant now seeks.[10]

It is also notable that Defendant received a substantial sentence of 60 months' imprisonment, for which he has now only served about five months.  In this Court's estimation, releasing the Defendant from BOP custody at this juncture would undermine one purpose of the sentence that was imposed – that is, to reflect the seriousness of Defendant's offense.  *See United States v. Wilson*, Crim. No. 15-256, 2020 WL 4805048, at *1 (W.D. Pa. Aug. 17, 2020) (releasing a defendant who had served only approximately half of original sentence of 121-months' imprisonment for drug trafficking offense is insufficient and would send the wrong message to others inclined to engage in similar conduct); *Robertson*, Crim. No. 17-289, Docket No. 462 at 10 (releasing a defendant who had served only about three months of a 90-month term of imprisonment would fail to reflect the seriousness of the offense).

Another factor which strongly counsels against a sentence reduction is the need to protect the community from further crimes by Defendant.  *See* 18 U.S.C. §§ 3553(a)(2)(C); 3142(g).

---

10   Other information about Defendant's history and characteristics weigh against granting a sentence reduction. Although the Court recognizes that Defendant's employment history is solid, he is only 29 years old and has long struggled with substance abuse, including while under Court supervision on pretrial release in this case.  (Docket No. 84, ¶¶ 5-8, 62, 73-76, 79-80).  There is no information in the record before the Court to indicate what, if any, substance abuse treatment or other programming Defendant has taken advantage of during the relatively short time he has been in BOP custody.   Given that Defendant has not had sufficient opportunity to rehabilitate, recidivism remains a concern if he were to be released.  *See Robertson*, Crim. No. 17-289, Docket No. 462 at 10 (observing that the need to deter future criminal conduct will not be achieved where nothing in the record "suggests that the three (3) months [defendant] has spent in custody have achieved the rehabilitation intended by this Court's original sentence").

As this Court has repeatedly observed, drug trafficking poses a substantial risk of harm to the community. What's more, Defendant also accepted responsibility for possessing firearms, which combined with drug trafficking creates the potential for a very serious risk of danger to the community.

Despite same, Defendant now argues that he is not a danger to the community because he was released on bond prior to sentencing and he was permitted to self-report to prison. (Docket No. 101, ¶ 21). The Court is not persuaded by this argument, particularly given that Defendant had some difficulty complying with pretrial release conditions as shown by the reports of non-compliance and the bond violation petition filed in this case, (*see* Docket No. 84, ¶¶ 5-8), which occurred pre-pandemic when the Probation Office was able to provide more in-person supervision. Since the onset of the pandemic, in-person supervision has been curtailed due to social distancing requirements, which would complicate monitoring Defendant's activities if he were to be released. *See United States v. Littrell*, No. 3:18-cr-00123-JO, 2020 WL 3889053, at *4 (D. Oregon July 10, 2020) (denying compassionate release and noting that defendant who was on supervised release prior to incarceration and permitted to self-report remains a danger to the community because in-person supervision is now curtailed due to COVID-19 pandemic). This difficulty, coupled with the seriousness of Defendant's offense, precludes the Court from confidently determining that Defendant will not engage is similar conduct which will endanger the community if he is released.

IV. **CONCLUSION**

The Court concludes that there are no extraordinary and compelling reasons which warrant a sentence reduction in Defendant's case and the § 3553(a) factors weigh heavily against

same. Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Emergency Relief from Sentence (Docket No. 101) is DENIED.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
Senior United States District Judge

Date:       August 24, 2020

cc/ecf:     All counsel of record